**MILSTEIN JACKSON FAIRCHILD & WADE, LLP**
Gillian L. Wade, State Bar No. 229124
gwade@mjfwlaw.com
Sara D. Avila, State Bar No. 263213
savila@mjfwlaw.com
Marc A. Castaneda, State Bar No. 299001
mcastaneda@mjfwlaw.com
10990 Wilshire Blvd., 8th Floor
Los Angeles, California 90024
Tel: (310) 396-9600
Fax: (310) 396-9635

*Attorneys for Plaintiff and the Class*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLORIA QUINONES, individually, and on behalf of all others similarly situated, <br><br> Plaintiff, <br> vs. <br><br> THE PROCTER & GAMBLE COMPANY, an Ohio Corporation, <br><br> Defendant. | Case No. <br><br> **CLASS ACTION COMPLAINT FOR:** <br><br> 1. **VIOLATION OF CALIFORNIA'S CONSUMER LEGAL REMEDIES ACT, CAL. CIV. CODE § 1750, *ET SEQ.*** <br> 2. **UNJUST ENRICHMENT** <br> 3. **BREACH OF IMPLIED WARRANTY** <br> 4. **BREACH OF EXPRESS WARRANTY** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff, Gloria Quinones ("Plaintiff"), individually and on behalf of all others similarly situated, files this Complaint against The Procter & Gamble Company, ("Defendant"), and in support states the following.

## NATURE OF THE ACTION

1.      This is a class action lawsuit by Plaintiff, and all others similarly situated, who purchased certain aerosol antiperspirant sprays manufactured, sold and distributed by Defendant. Defendant distributes, markets and sells several over-the-counter aerosol antiperspirant products sold under the brand names "Old Spice" and "Secret" (the "Aerosol Antiperspirant Products"). Several of Defendant's Aerosol Antiperspirant Products sold under these brand names have been independently tested and shown to be adulterated with benzene, a known human carcinogen. The presence of benzene in Defendant's Aerosol Antiperspirant Products was not disclosed in the products' label, in violation of state and federal law. Plaintiff and the putative class suffered economic damages due to Defendant's misconduct (as set forth below) and they seek injunctive relief and restitution for the full purchase price of the Aerosol Antiperspirant Products they purchased. Plaintiff alleges the following based upon personal knowledge as well as investigation by counsel, and as to all other matters, upon information and belief. Plaintiff further believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## JURISDICTION AND VENUE

2.      This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are in excess of 100 class members and Plaintiff is a citizen of a state different from Defendant.

3.      This Court has jurisdiction over Defendant because, upon information and belief, Defendant is authorized to conduct and do business in California. Defendant has marketed, promoted, distributed, and sold the Aerosol Antiperspirant

Products in California and Defendant has sufficient minimum contacts with this State and/or sufficiently avails itself of the markets in this State through promotion, sales, distribution and marketing within this State to render the exercise of jurisdiction by this Court permissible.

4.      Venue is proper in this Court pursuant to 28 U.S.C. §1391(a) and (b) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred while she resided in this judicial district. Venue is also proper under 18 U.S.C. §1965(a) because Defendant transacts substantial business in this District.

## **PARTIES**

5.      Plaintiff Gloria Quinones resides in Burbank, California, , and at all times relevant hereto has been a resident of Burbank, California. On multiple occasions throughout the last several years, Quinones purchased Secret Antiperspirant/Deodorant Powder Fresh Aerosol Spray from various retailers in California. She paid several dollars each for the Aerosol Antiperspirant Products. During that time, based on the false and misleading claims by Defendant, Quinones was unaware that Defendant's Aerosol Antiperspirant Products may be adulterated with benzene. Quinones purchased the Defendant's Aerosol Antiperspirant Products on the assumption that the labeling of Defendant's Aerosol Antiperspirant Products was accurate and that the products were unadulterated, safe and effective. Quinones would not have purchased Defendant's Aerosol Antiperspirant Products had she known there was a risk the products may contain benzene, a known human carcinogen. As a result, Plaintiff suffered injury in fact when she spent money to purchase products she would not otherwise have purchased absent Defendant's misconduct, as alleged herein.

6.      Defendant The Procter & Gamble Company is an Ohio corporation with its principal place of business at 1 P&G Plaza, Cincinnati, OH 45202. As one of the world's leading brands of skin care, hair care and cosmetics, Defendant distributes its products, including the Aerosol Antiperspirant Products, throughout the United

States.  Defendant's line of Aerosol Antiperspirant Products, including the adulterated antiperspirant purchased by Plaintiff and members of the putative class, are available at retail stores throughout California    and the United States.

### **FACTUAL ALLEGATIONS**

7.    Defendant manufactures, markets, advertises, labels, distributes, and sells a variety of Aerosol Antiperspirant Products, including aerosol antiperspirants sold under the brand names Old Spice and Secret.

8.    In 2021, Valisure LLC and ("Valisure"), an analytical pharmacy, ran tests on a variety of Defendant's Aerosol Antiperspirant Products. Specifically, Valisure tested  numerous lots of Defendant's Old Spice and Secret Aerosol Antiperspirant Products. Through its testing, Valisure  discovered that all the tested Aerosol Antiperspirant Products sold under the name brand Secret contain benzene, with values ranging from 0.10 ppm to 2 ppm, and more than 2 ppm up to 16.2 ppm. Through its testing, Valisure also discovered that many of the tested Aerosol Antiperspirant Products sold under the name brand Old Spice contain benzene, with values ranging from less than .1 ppm, 0.10 ppm to 2 ppm, and more than 2 ppm up to 17.7 ppm. For reference, the National Institute for Occupational Safety and Health ("NIOSH") recommends protective equipment be worn by workers expecting to be exposed to benzene at concentrations of 0.1 ppm and defines "skin absorption" as an exposure route. [1]  Notably, benzene is not listed as an active or inactive ingredient on any of the labels of the Defendant's Aerosol Antiperspirant Products. Moreover, all the Aerosol Antiperspirant Products are marketed and advertised in an identical manner—as "Antiperspirant."

9.    On November 4, 2021, Valisure filed a citizen petition with the Food and Drug Administration ("FDA") asking the agency to recall all batches of Defendant's

---

[1] Centers for Disease Control and Prevention. *The National Institute for Occupational Safety      and      Health      (NIOSH),      Benzene* (https://www.cdc.gov/niosh/npg/npgd0049.html).

CLASS ACTION COMPLAINT

Aerosol Antiperspirant Products tested that (as tested) contained 0.1 ppm or more of benzene, on the basis that they are adulterated under Section 501 of the FDCA (21 U.S.C. § 351) and misbranded under Section 502    of the FDCA (21 U.S.C. § 352). As of this filing, the FDA has not responded to Valisure's citizen petition and Defendant has not taken any action to remove the Aerosol Antiperspirant Products from the market.

10.    Benzene is used primarily as a solvent in the chemical and pharmaceutical industries, as a starting material and intermediate in the synthesis of numerous chemicals, and in gasoline. The major United States source of benzene is petroleum. The health hazards of benzene have been recognized for over one hundred years. According to the National Toxicology Program ("NTP"), benzene is "*known to be a human carcinogen* based on sufficient evidence of carcinogenicity from studies in humans."[2] Benzene has also been "found to be carcinogenic to humans" by the International Agency for Research on Cancer ("IARC"). Benzene was "[f]irst evaluated by IARC in 1974 . . . and was found to be carcinogenic to humans (Group 1), a finding that has stood since that time."[3] As noted by the IARC:

> In the current evaluation, the Working Group again confirmed the carcinogenicity of benzene based on *sufficient evidence* of carcinogenicity in humans, *sufficient evidence* of carcinogenicity in experimental animals, and *strong* mechanistic evidence .… The Working Group affirmed the strong evidence that benzene is genotoxic, and found that it also exhibits many other key characteristics of carcinogens, including in exposed humans. In particular, benzene is metabolically activated to electrophilic metabolites; induces oxidative stress and associated oxidative damage to DNA; is genotoxic; alters DNA repair or causes genomic instability; is immunosuppressive; alters cell proliferation, cell death, or nutrient supply; and modulates receptor-mediated effects.[4]

Likewise, the Food and Drug Administration ("FDA") recognizes that "[b]enzene is a carcinogen that can cause cancer in humans"[5] and classifies benzene

---

[2] http://ntp.niehs.nih.gov/go/roc/content/profiles/benzene.pdf (emphasis added).

[3] Benzene / IARC Working Group on the Evaluation of Carcinogenic Risks to Humans (2017:Lyon, France), at p. 33.

[4] *Id*. at 34.

[5] https://www.fda.gov/food/chemicals/questions-and-answers-occurrence-benzene-soft-drinks-and-other-beverages#q1.

CLASS ACTION COMPLAINT

as a "Class 1" solvent that should be "avoided."[6] FDA's Guidance for Industry states that "Solvents in Class 1 . . . should not be employed in the manufacture of drug substances, excipients, and drug products because of their unacceptable toxicities or deleterious environmental effect."[7]

11.    The FDA regulates antiperspirants to ensure they meet safety and effectiveness standards.[9] The FDA regulates antiperspirants, including the Aerosol Antiperspirant Products at issue here, as over-the-counter ("OTC") drugs rather than as cosmetics. The FDA defines Antiperspirant as a "drug product applied topically that reduces the production of perspiration (sweat) at that site."[8] As an FDA-regulated product, antiperspirants must pass certain tests before they are sold.

12.    Per the FDA regulations governing Defendant's Aerosol Antiperspirant Products, titled "Antiperspirant Drug Products for Over-the-Counter Human Use," there are certain acceptable active ingredients in products that are labeled as Antiperspirant.[9] Benzene, a known human carcinogen, is not on the FDA's list of acceptable active or inactive ingredients for Aerosol Antiperspirant Products. Nor is benzene identified as an active or inactive ingredient on any of the Defendant's Aerosol Antiperspirant Products. Nevertheless, Defendant proclaims in its advertising that benzene is one of the materials "we do not use as ingredients in any of our formulated products,"[10] which is a false and misleading statement.

13.    The governing regulations provide: "An over-the-counter antiperspirant drug product  in a form suitable for topical administration is generally recognized as safe and effective and is not misbranded if it meets each condition in this part and

---

[6] https://www.fda.gov/media/71737/download.
[7] FDA Guidance for Industry, Q3C Impurities: Residual Solvents (6/30/2017), available at https://www.fda.gov/media/71736/download.
[8] 21 C.F.R. § 350.3.
[9] 21 C.F.R. § 350.10.
[10] https://us.pg.com/ingredients/

CLASS ACTION COMPLAINT

each general condition established in § 330.1 of this chapter."[11] Defendant failed to meet this standard as further described herein.

14.    The manufacture of any misbranded or adulterated drug is prohibited under federal law[12] and California state law.

15.    The introduction into commerce of any misbranded or adulterated drug is similarly prohibited.[13]

16.    The receipt in interstate commerce of any adulterated or misbranded drug is also unlawful.[14]

17.    Among the ways a drug may be adulterated are:

> If it consists in whole or in part of any filthy, putrid, or decomposed substance; or . . . whereby it may have been rendered injurious to health;[15]

18.    A drug is misbranded:

> (a) "If its labeling is false or misleading in any particular."[16]

> (b) If the labeling does not contain, among other things, "the proportion of each   active ingredient[.]"[17]

> (c) "If it is dangerous to health when used in the dosage or manner, or with the frequency or duration prescribed, recommended, or suggested in the labeling thereof."[18]

---

[11] 21 C.F.R. § 350.1.
[12] 21 U.S.C § 331(g).
[13] 21 U.S.C. §331(a).
[14] 21 U.S.C. §331(c).
[15] 21 U.S.C. §351(a)(2)(B).
[16] 21 U.S.C. §352(a)(1).
[17] 21 U.S.C. §352(e)(1)(A)(ii).
[18] 21 U.S.C. §352(j).

CLASS ACTION COMPLAINT

19. If a manufacturer labels a drug but omits ingredients, that renders the drug misbranded.[19]

20. Defendant did not disclose that benzene, a known human carcinogen, may be present in the Aerosol Antiperspirant Products purchased by Plaintiff and the putative class members. As a result, its Aerosol Antiperspirant Products are adulterated and misbranded. There is "no safe level of benzene" exposure, so it is unsuitable for human application as an ingredient in any antiperspirant.[20]

21. Defendant wrongfully advertised and sold the Aerosol Antiperspirant Products without any labeling to indicate to consumers that these products may contain benzene. The following image shows an example:

[19] 21 C.F.R. §§201.6. "The labeling of a drug may be misleading by reason (among other reasons) of: … (2) Failure to reveal the proportion of, or other fact with respect to, an ingredient present in such drug, when such proportion or other fact is material in the light of the representation that such ingredient is present in such drug." 21 C.F.R. §201.10(2).
[20] https://www.who.int/ipcs/features/benzene.pdf.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28




22.    In addition, Defendant maintains a "smartlabel.pg.com" webpage identifying the active and inactive ingredients in its products, and benzene is not listed as an ingredient in any of its Aerosol Antiperspirant Products. [21] In fact, Defendant specifically promises to consumers that benzene is one of the materials "we do not use as ingredients in any of our formulated products."[22]



23.    Plaintiff has standing to represent members of the putative class because there is sufficient similarity between the specific Aerosol Antiperspirant Products purchased by the Plaintiff and the        other Aerosol Antiperspirant Products not purchased by Plaintiff. Specifically, each and every one of Defendant's Aerosol Antiperspirant Products (i) are marketed in substantially the same way – as "Antiperspirant"— and (ii) fail to include labeling indicating to consumers that the Aerosol Antiperspirant Products may contain benzene as an active or inactive

---

[21] https://smartlabel.pg.com/00037000730347.html; https://smartlabel.pg.com/00037000711087.html
[22] https://us.pg.com/ingredients/.

9

ingredient. Accordingly, the misleading effect of all the Aerosol Antiperspirant Products is substantially the same.

24.    Plaintiff references federal law in this Complaint not in any attempt to enforce it, but to demonstrate that their state-law tort claims do not impose any additional obligations on Defendant, beyond what was already required of them under federal law.

## CLASS ACTION ALLEGATIONS

25.    Plaintiff brings this action on behalf of herself and all other similarly situated  class members (the "Class") pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following class against Defendant for violations of California state laws and/or similar laws in other states:

### Nationwide Class Action

All consumers who purchased any Aerosol Antiperspirant Product sold under the name brand Secret and/or Old Spice in the United States of America and its territories    from December 10, 2017 to the present for personal use or consumption.

Excluded from the Class are individuals who allege personal bodily injury resulting from the use of Defendant's Aerosol Antiperspirant Products. Also excluded from this Class are Defendant, any parent  companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice or judicial officer presiding over this matter.

26.    In the alternative, Plaintiff brings this action on behalf of herself and all other similarly situated California consumers pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure and seeks certification of the following class:

**California-Only Class Action**

> All consumers who purchased any Aerosol Antiperspirant Product sold under the name brand Secret and/or Old Spice in the State of California from November 4, 2017 to the present for personal use or consumption.

> Excluded from the Class are individuals who allege personal bodily injury resulting from the use of Defendant's Aerosol Antiperspirant Products. Also excluded from this Class are Defendant, any parent companies, subsidiaries, and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all governmental entities, and any judge, justice or judicial officer presiding over this matter.

27.    The members of the Class are so numerous that joinder of all members of the Class is impracticable. Plaintiff is informed and believes that the proposed Class contains thousands of purchasers of Defendant's Aerosol Antiperspirant Products who have been damaged by Defendant's conduct as alleged herein. The precise number of Class members is unknown to Plaintiff at this time.

28.    Plaintiff's claims are typical to those of all Class members because members of the Class are similarly injured through Defendant's uniform misconduct described above and were subject to Defendant's deceptive claims that accompanied Defendant's Aerosol Antiperspirant Products sold under the name brands Secret and Old Spice. Plaintiff is advancing the same claims and legal theories on behalf of herself and all members of the Class.

29.    Plaintiff's claims raise questions of law and fact common to all members of the Class, and they predominate over any questions affecting only individual Class members. The claims of Plaintiff and all prospective Class members involve the same alleged defect. These common legal and factual questions include the following:

(a)whether Defendant's Aerosol Antiperspirant Products contained benzene;

(b) whether Defendant's omissions are true, or are misleading, or objectively likely to deceive a reasonable consumer;

(c) whether the alleged conduct constitutes violations of the laws asserted;

(d) whether Defendant's alleged conduct violates public policy;

(e) whether Defendant engaged in false or misleading advertising;

(f) whether Defendant was unjustly enriched as a result of its labeling, marketing, advertising and/or selling of the Aerosol Antiperspirant Products;

(g) whether Plaintiff and the Class members are entitled to damages and/or restitution and the proper measure of that loss; and

(h) whether an injunction is necessary to prevent Defendant from continuing to market and sell defective and adulterated Aerosol Antiperspirant Products that contain benzene, a known human carcinogen.

30.    Plaintiff and her counsel will fairly and adequately protect and represent the interests of each member of the class. Plaintiff has retained counsel experienced in complex litigation and class actions. Plaintiff's counsel has successfully litigated other class action cases similar to that here and have the resources and abilities to fully litigate and protect the interests of the Class. Plaintiff intends to prosecute this claim vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class, nor is Plaintiff subject to any unique defenses.

31.    A class action is superior to the other available methods for a fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by the Plaintiff and individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendant. It would thus be virtually impossible for Plaintiff and Class members, on an individual basis, to obtain effective redress for the wrongs done to

them. Further, it is desirable to concentrate the litigation of the Class members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

32.    The Class also may be certified because Defendant has acted or refused to act on grounds applicable to the Class, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

33.    Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendant from engaging in the acts described above, such as continuing to market and sell Aerosol Antiperspirant Products that may be adulterated with benzene, and requiring Defendant to provide a full refund of the purchase price of the Aerosol Antiperspirant Products to Plaintiff and Class members.

34.    Unless a Class is certified, Defendant will retain monies received as a result of its conduct that were taken from Plaintiff and the Class members. Unless a Class-wide injunction is issued, Defendant will continue to commit the violations alleged and the members of the Class and the general public will continue to be misled.

### COUNT I
### Violation of California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *set seq*. (On Behalf of the California Subclass)

35.    Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

36.    This Count is brought by Plaintiff and other class members who are from the State of California.

37.    California's Consumers Legal Remedies Act ("CLRA"), Cal Civ Code

§1750, *et seq.*, prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a).

38.     Plaintiff and members of the California Subclass are "consumers" within the meaning of Cal. Civ. Code § 1761(d) because they bought Aerosol Antiperspirant Products for personal, family, or household purposes.

39.     Defendant is a "person" within the meaning of California Civil Code sections 1761(c) and 1770 and provided "goods" within the meaning of sections 1761(a) and 1770.

40.     Plaintiff, the other members of the California Subclass, and Defendant have engaged in "transactions," as that term is defined by California Civil Code § 1761(e).

41.     Defendant's acts and practices, as alleged in this complaint, violate the CLRA because they include unfair and deceptive acts and practices in connection with transactions (the sale of Aerosol Antiperspirant Products).

42.     As alleged more fully above, Defendant violated the CLRA by falsely representing to Plaintiffs and the other members of the California Subclass that Aerosol Antiperspirant Products (i) would not contain elevated levels of benzene and (ii) are generally recognized as safe for human consumption. In fact, the Aerosol Antiperspirant Products contained elevated levels of benzene and were not safe for human consumption.

43.     These misrepresentations constitute "unfair or deceptive acts or practices" that are prohibited by the CLRA, Cal. Civ. Code §§ 1770(a)(5); 1770 (a)(7); 1770(a)(9); and 1770(a)(16).

44.     Further, Defendant concealed from and failed to disclose to Plaintiff and the California Subclass that its Aerosol Antiperspirant Products did not conform to the product's labels, packaging, advertising, and statements in that it contained

elevated levels of benzene and was not safe for human consumption.

45.    Defendant had a duty to disclose to Plaintiff and members of the California Subclass the true quality, characteristics, ingredients, nutrient levels, and suitability of the Aerosol Antiperspirant Products because Defendant was in a superior position to know the true nature of its products and Defendant knew that Plaintiff and members of the California Subclass could not reasonably have been expected to learn or discover that the Aerosol Antiperspirant Products were misrepresented in the packaging, labels, advertising, and website prior to purchasing the Aerosol Antiperspirant Products.

46.    The facts misrepresented, concealed or not disclosed by Defendant to Plaintiff and members of the California Subclass were material in that a reasonable consumer would have considered them important when deciding whether to purchase the Aerosol Antiperspirant Products.

47.    Plaintiff and California Subclass members' reliance on these misrepresentations and omissions was reasonable given Defendant's advertising, representations, warranties, and general promotions of Aerosol Antiperspirant Products.    Plaintiff and members of the California Subclass did not know that Defendant was misrepresenting, concealing or otherwise omitting material facts.

48.    Plaintiffs are concurrently filing the declaration of venue required by Defendant's actions as described herein were done with conscious disregard of Plaintiff's rights and the rights of Class members, and Defendant has acted wantonly and maliciously in their concealment of the same.

49.    As a direct and proximate result of Defendant's violations, Plaintiff and the California Subclass are entitled to injunctive relief ensuring Defendant complies with all proper quality and safety standards going forward.

50.    Pursuant to Cal. Civ. Code § 1780(a), Plaintiff currently seeks restitution and an order enjoining Defendant from engaging in the methods, acts and practices alleged herein, and any other relief deemed proper by the Court.

51.  Concurrent with the filing of this Complaint, Plaintiff sent Defendant notice advising Defendant that it violated and continues to violate, Section 1770 of the CLRA (the "Notice"). The Notice complied in all respects with Section 1782 of the CLRA. Plaintiffs sent the Notice by Certified U.S. Mail, return-receipt requested to Defendant at its principal place of business in Ohio (and to Defendant's registered agent for service of process in California). The Notice advised Defendant it must correct, repair, replace or otherwise rectify its conduct alleged to be in violation of Section 1770 within 30 days. If Defendant fails to do so, Plaintiff will amend this Complaint to seek damages for the CLRA violations alleged herein.

## COUNT II
## Unjust Enrichment
### (On Behalf of the Nationwide Class and California Subclass)

52.  Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

53.  As a result of Defendant's wrongful and deceptive conduct alleged herein, Defendant knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by the Plaintiff and members of the Class when they purchased the Aerosol Antiperspirant Products.

54.  In so doing, Defendant acted with conscious disregard for the rights of Plaintiff and members of the Class.

55.  As a result of Defendant's wrongful conduct as alleged herein, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Class.

56.  Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

57.  Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to be permitted to retain the benefits it received, and is still receiving,

without justification, from the false and deceptive labeling and marketing of the Aerosol Antiperspirant Products to    Plaintiff and members of the Class.

58.    Defendant's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

59.    The financial benefits derived by Defendant rightfully belong to Plaintiff and members of the Class.

60.    Defendant should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the Class all wrongful or inequitable proceeds received by them.

61.    Finally, Plaintiff and members of the Class may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

## COUNT III
### Breach of Implied Warranty
### (On Behalf of the Nationwide Class and California Subclass)

62.    Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

63.    Defendant was at all relevant times the manufacturer, distributor, warrantor and/or seller of the Aerosol Antiperspirant Products. Defendant knew or had reason to know of the specific use for which its Aerosol Antiperspirant Products were purchased.

64.    At the time Defendant marketed and otherwise placed its Aerosol Antiperspirant Products into the stream of commerce, it knew of the particular purpose for which Plaintiff and the Class members purchased the Aerosol Antiperspirant Products—to have a safe and effective antiperspirant, which did not contain any dangerous carcinogens. Defendant also knew that consumers, including Plaintiff and members of the Class, would have no ability or opportunity to determine the ingredients in the Aerosol Antiperspirant Products, but instead would rely on Defendant's representations that the Aerosol Antiperspirant Products were suitable

for their particular purpose and free of dangerous carcinogens (*i.e.,* benzene).

65. At all times, Plaintiff and the Class members used the Aerosol Antiperspirant Products in the manner that was intended for use.

66. Defendant provided Plaintiff and the Class members with an implied warranty that its Aerosol Antiperspirant Products were merchantable and fit for the ordinary purposes for which they sold and not dangerous or hazardous to the user's health.

67. Further, as the intended consumers and ultimate users of the Aerosol Antiperspirant Products, Plaintiff and the Class members are intended third-party beneficiaries of any contracts between Defendant and any retailers from whom Plaintiffs obtained Aerosol Antiperspirant Products, which contain the implied warranty of merchantability and to be fit for ordinary purposes, safe and not hazardous to one's health. Plaintiff and the Class members, not any retailers, are the parties intended to benefit by any such contract because they are the people using the Aerosol Antiperspirant Products in the manner intended.

68. At all times relevant all fifty States and the District of Columbia and Puerto Rico have codified and adopted the provisions of the Uniform Commercial Code governing the implied warranty of merchantability and fitness for ordinary purpose: Ala. Code § 7-2-314; Alaska Stat. § 45.02.314; Ariz. Rev. Stat. Ann. § 47-2314; Ark. Code. Ann. § 4-2-314; Cal. Com. Code § 2314; Colo. Rev. Stat. § 4-2-314; Conn. Gen. Stat. Ann. § 42a-2-314; 6 Del. Code. § 2-314; D.C. Code. § 28:2-314; Fla. Stat. Ann. § 672.314; Ga. Code. Ann. § 11-2-314; Haw. Rev. Stat. § 490:2-314; Idaho Code § 28-2-314; 810 Ill. Comp. Stat. Ann. 5/2-314; Kan. Stat. Ann. § 84-2-314; Ky. Rev. Stat. Ann. § 355.2-314; La. Civ. Code Ann. Art. § 2520; 11 Me. Rev. Stat. Ann. § 2-314; Md. Code. Ann. § 2-314; Mass. Gen. Law Ch. 106 § 2-314; Mich. Comp. Laws Ann. § 440.2314; Minn. Stat. Ann. § 336.2-314; Miss. Code Ann. § 75-2-314; Mo. Rev. Stat. § 400.2-314; Mont. Code Ann. § 30-2-314; Nev. Rev. Stat. U.C.C. § 104.2314; N.H. Rev. Ann. § 382-A:2-314; N.J. Stat. Ann. § 12A:2-314;

N.M. Stat. Ann. § 55-2-314; N.Y. U.C.C. Law § 2-314; N.C. Gen. Stat. Ann. § 25-2-314; N.D. Stat. § 41-02-314; Ohio Rev. Code Ann. § 1302.27; Okla. Stat. tit. 12A § 2-314; Or. Rev. Stat. § 72.3140; 13 Pa. C.S. § 2314; P.R. Laws. Ann. Tit. 31, § 3841, et seq.; R.I. Gen. Laws § 6A-2-314; S.C. Code Ann. § 36-2-314; S.D. Stat. § 57A-2-314; Tenn. Code Ann. § 47-2-314; Tex. Bus. & Com. Code Ann. § 2-314; Utah Code Ann. § 70A-2-314; Va. Code § 8.2-314; Vt. Stat. Ann. 9A § 2-314; W. Va. Code § 46-2-314; Wash. Rev. Code § 62A 2-314; Wis. Stat. Ann. § 402.314; and Wyo. Stat. § 34.1-2-314.

69.    In breach of the implied warranty of merchantability, the Aerosol Antiperspirant Products that Defendant provided to Plaintiff and the Class members are not fit and suitable for their ordinary purpose because, inter alia, they contain dangerous carcinogens with the potential of causing serious injury and/or death. Defendant's Aerosol Antiperspirant Products supplied to Plaintiff and the Class members did not possess the basic degree of fitness for ordinary use due to the defects described herein. The defects are so basic that they render the Aerosol Antiperspirant Products unfit for their ordinary purposes. As such, they are not merchantable.

70.    As a direct and proximate result of Defendant's breach, Plaintiff and the Class members have suffered, and will continue to suffer, significant damages, loss and injury in an amount that will be established at trial.

71.    Plaintiff and the Class members are entitled to legal and equitable relief against Defendant, including consequential damages, rescission, attorneys' fees, costs of suit, and other relief as appropriate.

## COUNT IV

## Breach of Express Warranty

### (On Behalf of the Nationwide Class and California-Only Class)

72.    Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

73.    Plaintiff and each Class member formed a contract with Defendant at the

time Plaintiff and the other Class members purchased the Defendant's Aerosol Antiperspirant Products. The terms of the contract include the promises and affirmations of fact made by Defendant on its Aerosol Antiperspirant Products packaging and through marketing and advertising, including the promise that benzene is one of the materials "we do not use as ingredients in any of our formulated products."[23] This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain, and are part of the standardized contract that Defendant entered into with Plaintiff and each Class member.

74.   Defendant expressly warranted that its Aerosol Antiperspirant Products were fit for their ordinary use, *i.e.*, as a safe and FDA-compliant product suitable for human application "that reduces the production of perspiration (sweat) at that site." It also expressly warranted that its Aerosol Antiperspirant Products were not adulterated or misbranded.

75.   Defendant's Aerosol Antiperspirant Products did not conform to Defendant's express representations and warranties because they were not manufactured in compliance with FDA standards, were not suitable for human application, and were adulterated and misbranded.

76.   At all times relevant all the following States and Territories have codified and adopted the provisions of the Uniform Commercial Code: Ala. Code § 7-2-313; Alaska Stat. § 45.02.313; Ariz. Rev. Stat. Ann. § 47-2313;  Ark. Code. Ann. § 4-2-313;  Cal. Com. Code § 2313;  Colo. Rev. Stat. § 4-2-313;  Conn. Gen. Stat. Ann. § 42a-2-313;  6 Del. Code. § 2-313;  D.C. Code. § 28:2-313;  Fla. Stat. Ann. § 672.313; Ga. Code. Ann. § 11-2-313;  Haw. Rev. Stat. § 490:2-313;  Idaho Code § 28-2-313; 810 Ill. Comp. Stat. Ann. 5/2-313;  Ind. Code Ann. § 26-1-2-313; Kan. Stat. Ann. § 84-2-313; Ky. Rev. Stat. Ann. § 355.2-313;  11 Me. Rev. Stat. Ann. § 2-313;  Md. Code. Ann. § 2-313;  Mass. Gen. Law Ch. 106 § 2-313;  Mich. Comp. Laws Ann. §

---

[23] https://us.pg.com/ingredients/.

440.2313;  Minn. Stat. Ann. § 336.2-313;  Miss. Code Ann. § 75-2-313;  Mo. Rev. Stat. § 400.2-313;  Mont. Code Ann. § 30-2-313;  Nev. Rev. Stat. U.C.C. § 104.2313; N.H. Rev. Ann. § 382-A:2-313;  N.J. Stat. Ann. § 12A:2-313;  N.M. Stat. Ann. § 55-2-313;  N.Y. U.C.C. Law § 2-313;  N.C. Gen. Stat. Ann. § 25-2-313;  N.D. Stat. § 41-02-313; Ohio Rev. Code Ann. § 1302.26;  Okla. Stat. tit. 12A § 2-313;  Or. Rev. Stat. § 72.3130; 13 Pa. C.S. § 2313;  P.R. Laws. Ann. Tit. 31, § 3841, et seq.; R.I. Gen. Laws § 6A-2-313;  S.C. Code Ann. § 36-2-313;  S.D. Stat. § 57A-2-313;  Tenn. Code Ann. § 47-2-313;  Tex. Bus. & Com. Code Ann. § 2-313;   Utah Code Ann. § 70A-2-313;  Va. Code § 8.2-313;  Vt. Stat. Ann. 9A § 2-313;  W. Va. Code § 46-2-313; Wash. Rev. Code § 62A 2-313;  Wis. Stat. Ann. § 402.313 and Wyo. Stat. § 34.1-2-13.

77.    At the time that Defendant marketed and sold its Aerosol Antiperspirant Products, it recognized the purposes for which the products would be used, and expressly warranted the products were suitable for human application, FDA compliant and not adulterated or misbranded.  These affirmative representations became part of the basis of the bargain in every purchase by Plaintiff and each Class member, including but not limited to the express representation Defendant made that benzene is not an ingredient used in any of its products.

78.    Plaintiff and each Class member are natural persons who are reasonably expected to use, consume, or be affected by the adulterated and/or misbranded Aerosol Antiperspirant Products manufactured and sold by Defendant.

79.    Defendant breached its express warranties with respect to its Aerosol Antiperspirant Products because the products were not suitable for human application, did not comply with FDA standards, and were adulterated and misbranded.

80.    Plaintiffs and each Class member would not have purchased the Aerosol Antiperspirant Products had they known the products contained benzene, were not suitable for human application, did not comply with FDA standards, and/or were adulterated and misbranded.

81.    As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and other Class members have been injured and suffered damages in the amount of the purchase price of their Aerosol Antiperspirant Products, and any consequential damages resulting from the purchases, in that the Aerosol Antiperspirant Products they purchased were so inherently flawed, unfit, or unmerchantable as to have no market value.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, pray for judgment against the Defendant as to each and every count, including:

A.    An order declaring this action to be a proper class action, appointing Plaintiff and their counsel to represent the Class, and requiring Defendant to bear the costs of class notice;

B.    An order enjoining Defendant from selling the Aerosol Antiperspirant Products;

C.    An order enjoining Defendant from suggesting or implying that the Aerosol Antiperspirant Products are safe and effective for human application;

D.    An order requiring Defendant to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief, such as recalling existing Aerosol Antiperspirant Products;

E.    An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendant from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendant's past conduct;

F.    An order requiring Defendant to pay restitution/damages to restore all funds acquired by means of any act or practice declared by this Court to be an

unlawful, unfair, or fraudulent business act or practice, untrue or misleading advertising in violation of the FDUTPA, plus pre- and post-judgment interest thereon;

G.      An order requiring Defendant to disgorge any ill-gotten benefits received from Plaintiff and members of the Class as a result of any wrongful or unlawful act or practice;

H.      An order requiring Defendant to pay appropriate damages for breach of implied warranties;

I.      An order requiring Defendant to pay appropriate damages for breach of express warranties;

J.      An order requiring Defendant to pay all actual and statutory damages permitted under the counts alleged herein; and

K.      An order awarding attorneys' fees and costs to Plaintiff and the Class; and

L.      An order providing for all other such equitable relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

December 10, 2021                    Respectfully submitted,

_____
Gillian L. Wade
Sara D. Avila
Marc A. Castaneda
**MILSTEIN JACKSON FAIRCHILD & WADE, LLP**

*Counsel for Plaintiff*